GEORGE M. MELCHER *vs.* OCEAN INSURANCE COMPANY.

*Marine policy—construction of. Latent ambiguity.*

Where the property insured in a policy of marine insurance was described as "Sixty-five hundred and fifty dollars on charter, twenty-six hundred and fifty dollars on primage, and also fifteen hundred dollars on property on board ship 'Charles S. Pennell,' at and from New York to San Francisco," *Held,* that the phrase "at and from New York to San Francisco," is not descriptive of any portion of the property insured, but simply of the voyage during which the risk was to continue.

And where it appeared that the vessel was sailing under two charters, either of which answered the call in the policy, parol evidence is admissible to prove which of the charters was insured.

ASSUMPSIT on a policy of marine insurance.

The plaintiff, owner of one-eighth part of the ship "Chas. S. Pennell," entered into a charter-party to make a voyage from New York to San Francisco; thence homeward via the Chincha Islands and Europe, whereby he agreed to carry a cargo of guano from the Chinchas to Rotterdam or Hamburg, at the rate of four pounds sterling per ton. The vessel would carry seventeen hundred and fifty tons of guano, the value of the charter at the time it was effected being worth in currency about fifty-six thousand dollars.

After effecting this charter, the plaintiff obtained a cargo of coal and general merchandise for the outward voyage to San Francisco, the freight upon which amounted to twenty-six hundred and fifty dollars.

On March 20, 1864, the plaintiff wrote his agent as follows:

" The ship ' C. S. Pennell' is now nearly loaded, and will sail in all of this week. . . . I want you to insure on my part of the ship as follows : . . .

| | | |
|---|---|---|
| Charter to San Francisco, | $26,500, ⅛ | $3,300 |
| Primage on same, | | 1,325 |

| | |
|---|---:|
| Homeward charter from Chinchas, insure out, say 1,750 tons, at £4, £7,000 at current rates of exchange, $52,400, my ⅛ | 6,550 |
| Primage on same, | 2,650 |
| Chronometers, Dent. 1,883, Negos 1,261. | 500 |
| And on our effects, clothing, etc. | 1,000 |

On March 23, 1864, the plaintiff's agent effected, in the Washington Insurance Company, an insurance upon the San Francisco charter of $3,300 on freight and primage from New York to San Francisco; and in the defendant company a marine risk of $3,000 on the plaintiff's interest in the ship, at and from New York, etc. As the agent was about leaving the defendant company's office, the president of the defendant company asked the plaintiff's agent if he could give him any other insurance, whereupon the agent handed to the president plaintiff's letter above mentioned. After some discussion in relation to the guano charter, upon which insurance was sought, and the agent had explained to the president that for the reason that it would be cheaper to effect insurance, and especially a war risk, from San Francisco, and thence to Europe after the arrival of the vessel at San Francisco, the agent applied for insurance upon the guano charter for so much of the round voyage as lay between New York and San Francisco. This the president of the company understood. In accordance with these facts the defendant company issued a policy to the plaintiff, the material part of which was of the following tenor:

" This policy of insurance witnesseth, that the president and directors of the Ocean Insurance Company, do by these presents cause George M. Melcher, for account of whom it concerns, loss if any, payable to ————, to be insured, lost or not lost, $6,500 on charter, $2,650 on primage, and $1500 on property on board ship ' Charles S. Pennell,' at and from New York to San Francisco."

When the policy was delivered to the agent of the plaintiff, he inquired of the secretary whether he had not left out the word " guano " before the word " charter; " to which the secretary replied, " that don't make any difference, the insurance you effected in the

other office was freight, this is charter." Thereupon the agent asked the secretary if he had not rather have charter than freight; he replied, "No, if I get freight and the vessel is wrecked, the freight helps forward itself, whereas charter is a total loss."

April 1, 1864, plaintiff sailed for San Francisco. On May 25th following, his vessel was stranded upon a coral reef, not known to the plaintiff, and not laid down on any chart, the same being in longitude 38° 42' west, latitude 17° 18' south, or about twenty miles off the Itacolomi bank on the coast of Brazil. Soon after the vessel was taken to Rio de Janeiro, where, after due preliminary proceedings, she was sold at auction.

All the parol evidence, tending to prove that the insurance was upon the guano, was seasonably objected to by the defendants, but admitted by the presiding judge.

The defendant introduced the plaintiff's agent's application, dated March 23, 1864, of the following tenor, which was written by the secretary of the company and signed by the agent:

" I wish, for Geo. M. Melcher, $6,550 on charter, and $2,650 on primage, and $1,500 on property on board ship ' Chas. S. Pennell,' at and from New York to San Francisco, including war risk."

The case was withdrawn from the jury and reported to the full court, for their opinion upon the admissibility of so much of the evidence as was objected to by the defendants; and after the determination of this question the cause to stand for trial, if either party so desired.

*A. A. Strout*, for the plaintiff.

I. The words " at and from New York to San Francisco," have no reference to the charter insured, but simply describe the voyage for which the charter was insured. There is nothing in the policy that renders it imperative to give such a construction to this language, as would defeat the intention of the parties. The punctuation confirms the position.

If the words may be applied to both charter and voyage, they

would constitute such a latent ambiguity as would admit explanatory parol testimony.

II. If it be doubtful what construction should be given, then parol evidence of all facts connected with the issuing of the policy is admissible, that the court may be placed in the position of the parties, and thus be enabled to understand the intention of the parties. 1 Greenl. on Ev. (12th ed.), §§ 286, 287; *Lancey* v. *Phœnix Ins. Co.*, 56 Maine, 562.

When words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject-matter in contemplation by the parties, parol evidence is admissible to show the circumstances under which the contract was made, and the subject-matter to which the parties referred. *Peisch* v. *Dixon*, 1 Mason, 11.

. III. The evidence objected to is offered simply to explain what the subject-matter of the insurance was, and not to vary or enlarge the contract. 1 Greenl. on Ev., §§ 287, 288, 290; 1 Pars. on Mar. Ins. 112, 113 *et seq.*; *Foster* v. *U. S. Ins. Co.*, 11 Mass. 392; *Bradley* v. *Steam P. Co.*, 13 Peters, 98; *Salmon Falls* v. *Goddard*, 14 How. 446; *Hart* v. *Shaw*, 1 Clifford, C. C. Rep. 358.

IV. The insuring of a charter-party for a part of the round voyage is lawful, and an ordinary transaction. 1 Pars. on Mar. Ins., 169, 170, and cases there cited.

*J. & E. M. Rand*, for the defendants.

The charter described in the writ and offered in evidence was not covered by the policy, and all the plaintiff's testimony, except the policy, is inadmissible.

The face of the policy alone, independent of other testimony, does not cover the charter-party from Chinchas to Hamburg or Rotterdam.

There is no latent ambiguity warranting the admission of parol testimony in explanation.

. The policy insures for a voyage " at and from New York to San

Francisco," a charter for that voyage. The words describe the voyage and also the charter insured. The plaintiff's testimony tends to vary and not explain.

WALTON, J. This is an action on a marine insurance policy. The property insured is described in the policy as follows:

" Sixty-five hundred and fifty dollars on charter, twenty-six hundred and fifty dollars on primage, and also fifteen hundred dollars on property on board ship ' Charles S. Pennell,' at and from New York to San Francisco."

It will be noticed that the defendants insured among other things a charter, meaning, undoubtedly, the freight to be earned under a charter. At the time the vessel was lost she was sailing under two charters, one requiring her to carry coal and other merchandise from New York to San Francisco, and the other to carry a cargo of guano from the Chincha Islands to Hamburg or Rotterdam. The vessel was lost on her outward voyage. The question is, whether extrinsic evidence is admissible to show which of the two charters was the one insured by these defendants. The plaintiff offers to prove that it was the guano charter; and the defendants resist upon the ground that the words " at and from New York to San Francisco," which occur in the policy, are descriptive of the charter insured, and that extrinsic evidence to show that any other was intended is not admissible, as its effect would be to vary and not explain the policy.

We think the words " at and from New York to San Francisco," do not describe any portion of the property insured, but simply the voyage during which the risk was to continue.

It will be noticed that these words do not immediately follow the mention of the charter; that the primage and the amount insured upon it, and the other property on board the ship and the amount insured upon it, intervene between the mention of the charter and the words which the defendants claim are a description of it. It seems to us highly improbable that words descriptive of a thing should be allowed to be thus separated from the mention of the thing de-

scribed. Besides, they are not, in our judgment, such words as would be likely to be selected to describe the charter, while they are precisely such as were necessary to describe the voyage. It seems to us that a charter, if described at all, would be more likely to be described by the character of the merchandise to be carried, while the voyage, during which the insurance was to run, would almost invariably be described by the mention of the ports from which and to which the vessel was to sail. Nor can we believe that the words in question were used to describe both the voyage and the charter. The property insured, and the voyage during which the risk is to run, are very different matters; and we cannot believe that any writer would employ the same words to describe both. It is difficult to conceive how he could have a description of each in his mind at the same moment,—how he could intentionally pen a single sentence that should answer two such distinct purposes. We cannot believe that the words in question were written for two such distinct objects.

We have, then, a policy in which a charter is insured. Two charters are shown to exist, either of which will answer the call in the policy. Which of these charters did the defendants insure? Upon this point the parties are at issue. How shall it be determined? Why is not this the precise case of a latent ambiguity, to remove which extrinsic evidence may be resorted to? We think it is. Our conclusion, therefore, is that the plaintiff's evidence was admissible for that purpose. *Storer* v. *Ins. Co.*, 45 Maine, 175; 1 Greenl. Ev. §§ 287, 288, and authorities there cited.

*Plaintiff's evidence admissible.*

*Action to stand for trial.*

APPLETON, C. J.; BARROWS, DANFORTH, and TAPLEY, JJ., concurred.